UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARL C.,

              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Case No. 2:21-cv-1454-DGE

**ORDER REVERSING AND REMANDING DENIAL OF BENEFITS**

## I.  INTRODUCTION

Plaintiff seeks review of the denial of his applications for supplemental security income and disability insurance benefits.  Plaintiff contends the ALJ erred by (1) rejecting Plaintiff's testimony, (2) rejecting the opinions of Jill Fuller, D.O., (3) rejecting the opinions of Morgan McCormick, Psy.D., (4) rejecting the opinions of Shawn Kenderdine, Ph.D., and (5) ignoring a statement from speech language pathologist Celina Smith, SLP.  (Dkt. No. 10 at 1.)  As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.  BACKGROUND

Plaintiff is 50 years old, has at least a high school education, and has worked as an electronics mechanic, a short order cook, a cook, and a bioelectronics technician.  (Dkt. No. 8,

Admin. Record (AR) 26, 133.) On July 11, 2018, Plaintiff applied for benefits, ultimately alleging a disability onset date of June 6, 2018. (AR 16, 296–303.) Plaintiff's applications were denied initially and on reconsideration. (AR 133–192, 195-201, 205-10.) At Plaintiff's request, ALJ Glenn Meyers held a hearing on November 5, 2020. (AR 37–87.)

On November 25, 2020, ALJ Meyers issued a decision finding Plaintiff not disabled. (AR 16–29.) In relevant part, the ALJ found Plaintiff's date last insured under the Social Security Act was March 31, 2019. (AR 19.) The ALJ found Plaintiff had severe impairments of cognitive disorder resulting from traumatic brain injury and/or chronic traumatic encephalopathy and/or post-concussive disorder, cervical degenerative disc disease, depressive disorder, and anxiety disorder. (*Id.*) The ALJ found that prior to July 1, 2020, Plaintiff had the residual functional capacity to perform light work with additional exertional, postural, manipulative, environmental, cognitive, and social limitations. (AR 21.) After July 1, 2020, Plaintiff had the same limitations, but would also be off task for 20 percent of the workday. (AR 25.) The ALJ found Plaintiff was not disabled prior to July 1, 2020, because there were jobs available in significant numbers in the national economy that Plaintiff could perform. (AR 26.) After July 1, 2020, however, Plaintiff was disabled because there were no jobs available in significant numbers in the national economy that he could perform. (AR 28.) Plaintiff was therefore not disabled for purposes of disability insurance benefits at any time before his date last insured of March 31, 2019. (*Id.*) Plaintiff was disabled for purposes of supplemental security income benefits beginning July 1, 2020. (AR 29.)

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (AR 1–3.)

///

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 2

### III.  DISCUSSION

This Court may set aside the Commissioner's denial of social security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole.  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).  The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Although the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational.  *Ford*, 950 F.3d at 1154.  This Court "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

#### A.  Plaintiff's Testimony

Plaintiff contends the ALJ erred by failing to give clear and convincing reasons for rejecting his testimony.  (Dkt. No. 10 at 2–4.)  Plaintiff testified he suffers from pain in his hands, inability to focus, dizziness, ringing in his ears, irritability, isolation due to depression, and physical symptoms from anxiety, such as blistering on his face, increased bathroom use, and stomach pain.  (*See* AR 63, 73–74, 324, 329, 374, 379.)  He testified he could not remember his job tasks or show up to a job site on a regular basis.  (AR 64.)  He testified he can stand for five minutes at a time, and walk for ten minutes.  (AR 71.)  He testified he can sit for a half hour at a time before his neck starts to hurt.  (*Id.*)  He testified he needs to recline or lay down for more than 60 percent of an eight-hour period.  (AR 72.)

At the time of the hearing, Plaintiff testified he had four children, ages five, four, one,

and one.  (AR 44.)  He testified he has difficulty interacting with his children because he gets dizzy, his ears start ringing, he cannot think, and he is lethargic.  (AR 61.)  He testified his children go to daycare during the week, and their mother helps him care for them on the weekends.  (AR 47–48, 50.)  He testified his family helps care for the children when their mother is unable due to her own health issues.  (AR 50.)  He testified friends also regularly come over to help care for the children.  (*See* AR 52–54.)

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so.  This is not an easy requirement to meet.'"  *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15)*.*

The ALJ found Plaintiff met the first step, but found his testimony regarding the intensity, persistence, and limiting effects of his symptoms was "not fully supported prior to July 1, 2020, for the reasons explained in this decision."  (AR 22.)  The ALJ later noted Plaintiff's "activities of daily living, the medical and other evidence of record, and the findings of the State agency consultants indicate that the claimant could sustain a greater capacity than he described at the hearing before the established onset date of disability."  (AR 25.)

The ALJ's discussion falls short of the level of specificity required by the Ninth Circuit.  "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 4

reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding [the severity of his symptoms].'"[1] *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)). "[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("Our decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors—and comb the administrative record to find specific conflicts."). The ALJ discussed the medical evidence and Plaintiff's daily activities at step three of the sequential evaluation process and weighing of the medical opinions. (*See* AR 20–24.) However, that discussion was flawed, as explained below, and the ALJ did not adequately connect it to Plaintiff's testimony. The ALJ therefore harmfully erred in rejecting Plaintiff's testimony.

**B.    Dr. Fuller's Opinions**

Plaintiff contends the ALJ erred by rejecting Dr. Fuller's opinions. (Dkt. No. 10 at 4–6.) Dr. Fuller completed a form requesting documentation of a medical condition or disability in January 2018. (AR 1132–34.) Dr. Fuller opined Plaintiff was "unable to participate" in working, looking for work, or preparing for work. (AR 1132.) She opined Plaintiff was physically capable of sedentary work, defined as being able to lift ten pounds maximum and frequently lift articles such as files and small tools. (AR 1133.)

Dr. Fuller wrote a letter, dated February 18, 2020, stating that Plaintiff had multiple

---

[1] Social Security Ruling 16-3p, 2017 WL 5180304 (Oct. 25, 2017), eliminated the term "credibility" from agency policy. These cases and their premises nonetheless remain good law. *See Trevizo*, 871 F.3d at 678 n.5.

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 5

symptoms from traumatic brain injuries that were progressive. (AR 1136.) She did not opine as to any specific limitations, but stated Plaintiff's symptoms "are worse and decrease his overall function and [he] has been disabled." (*Id.*)

Dr. Fuller wrote another letter, dated October 27, 2020, further describing Plaintiff's symptoms. (AR 1383.) Dr. Fuller reported Plaintiff has chronic neck pain, upper back pain, headaches, and numbness. (*Id.*) She opined Plaintiff "is often confused, anxious, [has] difficulty remembering and focusing" and has depression and irritability. (*Id.*) Dr. Fuller opined Plaintiff's "work capacity is greatly reduced physically and mentally, [which] would severely impair his ability to function successfully in the workplace." (*Id.*)

The Commissioner argues new regulations promulgated in 2017 change the standard by which the ALJ's reasons for rejecting medical providers' opinions are measured. (*See* Dkt. No. 11 at 5–6.) In 2017, the Commissioner issued new regulations governing how ALJs are to evaluate medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). That explanation must be legitimate, as the Court will not affirm a decision that is based on legal error or not supported by substantial evidence. *See Trevizo*, 871 F.3d at 674. Thus, the regulations require the ALJ to provide specific and legitimate reasons to reject a doctor's opinions. *See also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012,

at *3 (W.D. Wash. Nov. 10, 2020) (finding the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

Before considering the ALJ's evaluation of Dr. Fuller's opinions, it is important to clarify what those opinions were. Under the Commissioner's new regulations, a medical opinion is "a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant has] one or more impairment-related limitations in" the claimant's ability to perform specific physical, mental, or related demands of work, and adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a), 416.913(a). Dr. Fuller's opinions can generally be summarized as: (1) Plaintiff is disabled or unable to work; (2) Plaintiff is physically limited to sedentary work, meaning he can lift 10 pounds maximum and items such as files and small tools frequently, and can sit, walk, and stand for brief periods; and (3) Plaintiff has difficulty focusing and remembering.

The ALJ reasonably rejected Dr. Fuller's opinions stating Plaintiff is disabled or unable to work. As the ALJ noted, findings that a claimant is disabled or unable to work are reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see McLeod v. Astrue*, 640 F.3d 881, 884–85 (9th Cir. 2011).

The ALJ erred in rejecting the rest of Dr. Fuller's opinions. The ALJ first found Dr. Fuller's opinions were brief and not well-supported. (AR 22.) The ALJ is correct Dr. Fuller's opinions were brief, but brevity alone is not a reason to reject them. The ALJ unreasonably found Dr. Fuller's opinions were not well-supported. Dr. Fuller wrote in the January 2018 form that Plaintiff suffered from "chronic traumatic encephalopathy (post-concussive syndrome), and

PTSD causing headaches, dizziness, pain, [unreadable], severe anxiety, decreased motivation, struggles to get out of [his] house and struggles to get help, [and] leg pain." (AR 1132.) Dr. Fuller noted this was supported by testing, lab reports, and other medical evidence. (*Id.*) The ALJ could not reject these opinions then without considering whether Dr. Fuller's treatment notes supported her opinions. *See Garrison*, 759 F.3d at 1013 (holding ALJ erred by rejecting doctor's opinions as "check-box form" while ignoring doctor's treatment records). Though the ALJ referenced Dr. Fuller's treatment notes, the ALJ erred in evaluating them and the entirety of the medical evidence. The ALJ therefore erred in rejecting Dr. Fuller's opinions as brief and not well-supported.

      The ALJ next erred in rejecting Dr. Fuller's opinions as internally inconsistent. The ALJ reasoned Dr. Fuller's opinions were internally inconsistent because she said Plaintiff was unable to work, but also said he could perform sedentary work. (AR 23.) This was not a reasonable interpretation of Dr. Fuller's opinions. When asked if Plaintiff's "physical, mental, emotional, or developmental condition(s) . . . limit[ed] [his] ability to work, look for work, or prepare for work," Dr. Fuller answered yes, noting physical and mental limitations. (AR 1132.) When asked if Plaintiff had "any limitations with lifting and carrying," Dr. Fuller answered that he was capable only of sedentary work. (AR 1133.) Dr. Fuller was addressing different issues in responding to these questions, and her opinion that Plaintiff was physically capable of performing sedentary work does not contradict her opinion that Plaintiff was unable to work when accounting for his physical and mental limitations.

      The ALJ further erred in rejecting Dr. Fuller's opinions as inconsistent with Plaintiff's daily activities. (*See* AR 23.) The ALJ's main contention here was that Plaintiff was able to care for his four young children. (*See id.*) However, this finding is not supported by substantial

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 8

evidence. Plaintiff testified, and the record documented, that his children went to daycare for much of the day. (*See* AR 47–48, 50, 382, 865.) He testified he gets significant help from family in caring for his children. (*See* AR 52–54, 61.) The ALJ did not identify adequate evidence to show an inconsistency between Dr. Fuller's opinions and Plaintiff's daily activities, and thus erred.

The ALJ finally erred in rejecting Dr. Fuller's opinions as inconsistent with the overall medical record. (*See* AR 23.) The ALJ reasoned Plaintiff's providers documented minimal difficulties on mental status examinations and little cognitive difficulty. (*Id.*) The ALJ made no mention of medical records contradicting Dr. Fuller's physical limitation opinions. (*See id.*) An ALJ "cannot simply pick out a few isolated instances" of medical health that support his conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). The medical evidence, including many of the records the ALJ cited, documented symptoms such as anxiety, depression, stress, frustration, and difficulty focusing. (*See, e.g.*, AR 757, 773, 798, 808, 813, 818, 824, 842, 862, 865, 871, 883, 1013, 1156, 1165.) Plaintiff at times had some normal findings on exam, such as normal attention, concentration, and insight. (*See, e.g.*, AR 757, 773, 1013, 1187.) However, the ALJ failed to adequately explain why those sporadic normal findings outweighed the abnormal findings. The ALJ therefore erred in rejecting Dr. Fuller's opinions as inconsistent with the medical evidence.

In sum, the ALJ did not err in rejecting Dr. Fuller's opinion that Plaintiff was unable to work or was disabled, but did err in rejecting her opinions that Plaintiff had specific physical and mental limitations.

    **C.**    **Dr. McCormick's Opinions**

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 9

Plaintiff contends the ALJ erred by rejecting Dr. McCormick's opinions regarding Plaintiff's mental limitations. (Dkt. No. 10 at 6–8.) Dr. McCormick performed a psychological evaluation of Plaintiff on July 6, 2020, and completed a medical source statement. (AR 1239–41, 1243–49.) She opined Plaintiff had marked limitations in his ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, and complete a normal workday or maintain a consistent pace without interruptions. (AR 1240.) Dr. McCormick opined these limitations began on June 6, 2018. (AR 1241.)

The ALJ rejected the portion of Dr. McCormick's opinions "suggesting the onset of the claimant's functional impairments was June 2018." (AR 23.) The ALJ found Dr. McCormick provided no support or rationale for that statement, and it was inconsistent with Plaintiff handling full care of his children until at least 2019. (*Id.*) The first part of this reasoning withstands scrutiny. An ALJ may reject a doctor's opinions when it is "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). Dr. McCormick did not explain why she thought Plaintiff's limitations began in June 2018, and her evaluation does not reveal any specific reasoning. (*See* AR 1241, 1243–49.) The ALJ therefore did not harmfully err in rejecting Dr. McCormick's opinion that Plaintiff's functional impairments began in June 2018.

To the extent the ALJ rejected the remainder of Dr. McCormick's opinions, his rationale was nearly identical to the rationale used to reject Dr. Fuller's opinions, and fails for the reasons stated above. (*See* AR 22–24.) The only additional reason the ALJ provided was that Dr.

McCormick's opinions were based on Plaintiff's self-reports, which the ALJ had elsewhere found unreliable. (AR 23.) The ALJ erred in rejecting Plaintiff's testimony, as explained above, and therefore could not reasonably reject Dr. McCormick's opinions for being based on Plaintiff's self-reports.

### D.    Dr. Kenderdine's Opinions

Plaintiff contends the ALJ erred by rejecting Dr. Kenderdine's opinions regarding Plaintiff's mental limitations. (Dkt. No. 10 at 8–9.) Dr. Kenderdine evaluated Plaintiff on June 29, 2016. (AR 596–600.) He did not review any of Plaintiff's medical records, but conducted a clinical interview and mental status examination. (*Id.*) Dr. Kenderdine opined Plaintiff had marked limitations in his ability to understand, remember, and persist in tasks by following detailed instructions, communicate and perform effectively in a work setting, and set realistic goals and plan independently. (AR 598.)

Dr. Kenderdine evaluated Plaintiff a second time on May 31, 2018. (AR 709–12.) Dr. Kenderdine reviewed his 2016 evaluation, but no other records. (AR 709.) As before, he conducted a clinical interview and mental status examination. (AR 709–12.) Dr. Kenderdine opined to similar limitations as he had previously, adding that Plaintiff was markedly limited in his ability to adapt to changes in a routine work setting, make simple work-related decisions, and completed a normal workday or week without interruptions from his psychologically based symptoms. (AR 709–10.) Dr. Kenderdine opined Plaintiff was now only moderately limited in his ability to set realistic goals and plan independently. (AR 710.)

The ALJ rejected Dr. Kenderdine's opinions. (AR 24.) The ALJ first rejected Dr. Kenderdine's opinions because "[t]hese evaluations and the forms completed were done pursuant to the rules and regulations of the Washington State Department of Social and Health Services

(DSHS)." (*Id.*) This reasoning fails because there is nothing to indicate the clinical interviews and mental status examinations Dr. Kenderdine performed were any different than they would have been if he had specifically evaluated Plaintiff for the purpose of social security disability. Furthermore, Dr. Kenderdine's evaluation forms defined the severity ratings he used, so there was no basis to find these opinions were only relevant to a DSHS claim.

The ALJ next rejected Dr. Kenderdine's opinions because he did not review any treatment records. (*Id.*) This was an accurate determination, but on its own does not say anything about whether Dr. Kenderdine's opinions were consistent with the overall record and supportable. This was thus not an adequate reason to reject Dr. Kenderdine's opinions.

The ALJ further rejected Dr. Kenderdine's opinions because he did not explain the bases or support for the limitations he assessed. (*Id.*) The ALJ's reasoning here failed to adequately consider Dr. Kenderdine's findings on examination, which showed support for the opined limitations. Dr. Kenderdine noted Plaintiff's recent memory functions were impaired based on testing results, and his remote memory was mildly impaired based on "some difficulties recalling dates and places." (AR 600.) Dr. Kenderdine noted Plaintiff had "[m]ildly impoverished" thought content, abnormal concentration, concrete interpretation of familiar proverbs, and no evidence of insight. (*Id.*) These findings all support Dr. Kenderdine's opined limitations, such as understanding, remembering, and persisting at following detailed instructions, communicating and performing effectively in a work setting, and making simple work-related decisions. The ALJ could not reject Dr. Kenderdine's opinions by summarily deciding his exam findings did not support his opinions.

The ALJ next rejected Dr. Kenderdine's opinions because they relied on Plaintiff's subjective statements. (AR 24.) As with Dr. McCormick, the ALJ erred in rejecting Plaintiff's

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 12

testimony, and thus erred in rejecting Dr. Kenderdine's opinions for relying on Plaintiff's statements.  *See supra* Part III.C.

As with Dr. Fuller and Dr. McCormick, the ALJ rejected Dr. Kenderdine's opinions as inconsistent with Plaintiff's performance of childcare activities and the overall medical record. (AR 24.)  These reasons fail with respect to Dr. Kenderdine's opinions for the same reasons they failed with respect to Dr. Fuller's and Dr. McCormick's opinions.  *See supra* Part III.B–C.

The ALJ last rejected Dr. Kenderdine's opinions because the ALJ believed Plaintiff's presentation to Dr. Kenderdine was different than his presentation to other providers.  (AR 24.) This was not a reasonable determination.  The ALJ pointed to one other exam as evidence Plaintiff performed worse on Dr. Kenderdine's exam than he did when examined in the context of treatment.  (*Id.*)  But as explained above, the record regularly documented abnormal mental symptoms.  (*See, e.g.*, AR 757, 773, 798, 808, 813, 818, 824, 842, 862, 865, 871, 883, 1013, 1156, 1165.)  The ALJ thus erred in rejecting Dr. Kenderdine's opinions based on the finding that Plaintiff's presentation was abnormal.

Defendant argues these errors were harmless because both of Dr. Kenderdine's opinions pre-date Plaintiff's alleged onset date of June 6, 2018.  (Dkt. No. 11 at 12–13.)  Dr. Kenderdine's May 31, 2018, opinions only pre-date the alleged onset date by a week, and Dr. Kenderdine opined Plaintiff's limitations would persist for at least two years.  (AR 711.)  Dr. Kenderdine noted in his June 2016 evaluation that the opined limitations set forth there would also persist for two years, which would extend into the first month of the alleged disability period.  (AR 599.) These opinions were thus relevant to the period for which Plaintiff alleged disability, and the ALJ's failure to adequately address them was harmful.

**E.     Ms. Smith's Statement**

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 13

Plaintiff contends the ALJ erred by ignoring Ms. Smith's statement. (Dkt. No. 10 at 9.) Ms. Smith evaluated Plaintiff for possible speech pathology care in June 2018. (AR 718–20.) Ms. Smith stated she "d[id] not feel [Plaintiff] is a good candidate for skilled [speech language pathology] intervention given lack of functional goals and significant anxiety, stressors, poor sleep, and pain." (AR 720.)

The ALJ did not err in failing to discuss Ms. Smith's statement. The ALJ "need not discuss *all* evidence presented to [him]. Rather, [he] must explain why 'significant probative evidence has been rejected.'" *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393. 1394–95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700. 706 (3d Cir. 1981)). Ms. Smith's statement was not a medical opinion, as it did not describe Plaintiff's impairments or what he could still do despite his impairments. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). The ALJ thus did not have to specifically discuss it.

F. **Scope of Remand**

Plaintiff cursorily asks the Court to remand this matter for an award of benefits. (Dkt. No. 10 at 9.) Except in rare circumstances, the appropriate remedy for an erroneous denial of benefits is remand for further proceedings. *See Leon v. Berryhill*, 880 F.3d 1041, 1043 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014)). Plaintiff has not analyzed the factors the Court considers before remanding for an award of benefits, nor shown any rare circumstances. The Court will remand for further administrative proceedings.

On remand, the ALJ shall reevaluate Plaintiff's testimony; Dr. Fuller's opinions, except for her opinions that Plaintiff was unable to work or was disabled; Dr. McCormick's opinions, except for her opinion that Plaintiff's limitations began in June 2018; and Dr. Kenderdine's

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 14

opinions. The ALJ shall reassess Plaintiff's residual functional capacity, and all relevant steps of the disability evaluation process. The ALJ shall conduct all further proceedings necessary to reevaluate the disability determination in light of this opinion.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 18th day of April 2022.

David G. Estudillo
United States District Judge